**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 13-cv-2824-WJM

WILMA MASON,

    Plaintiff,

v.

CAROLYN COLVIN, Acting Commissioner of Social Security

    Defendant.

---

**ORDER AFFIRMING ADMINISTRATIVE LAW JUDGE'S DENIAL OF BENEFITS**

---

    This is a social security benefits appeal brought under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). Plaintiff Wilma Mason ("Plaintiff") challenges the final decision of Defendant, the Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits, as well as supplemental security income benefits. The denial was affirmed by an administrative law judge ("ALJ"), who ruled Plaintiff was not disabled within the meaning of the Social Security Act ("Act"). This appeal followed. For the reasons set forth below, the Commissioner's decision is affirmed.

**I. BACKGROUND**

    Plaintiff was born on April 26, 1971 and was 39 years old on the alleged disability onset date. (Admin. Record ("R.") (ECF No. 15) at 35.) Plaintiff has at least a high school education and is able to communicate in English. (*Id.*) Plaintiff has past relevant work experience as a truck driver, assistant manager, retail, and amusement

park worker.  (*Id.*)

Plaintiff filed an application for disability insurance benefits and supplemental security income on October 14, 2010.[1]  (R. at 22.)  Her applications were initially denied on January 21, 2011.  (*Id.*)  After a request for hearing, Plaintiff's claims were heard in a video hearing before ALJ Kim S. Nagle on June 19, 2012.  (*Id.*)  Plaintiff and vocational expert Timothy Shaner testified at the administrative hearing.  (*Id.*)

On June 29, 2012, the ALJ issued a written decision in accordance with the Commissioner's five-step sequential evaluation process.[2]  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 12, 2010, the alleged onset date.  (R. at 25.)  At step two, she found that Plaintiff suffered from the following severe impairments: degenerative disc disease with low back pain, obesity, personality disorder, bipolar disorder, and marijuana dependence.  (*Id.*)  At step three, the ALJ found that Plaintiff's impairments, while severe, did not meet or medically equal any of the impairments or combination of impairments listed in the social security regulations.  (R. at 26.)

The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in the social security regulations, but with the

---

[1] Plaintiff's application was filed under the name Wilma Bane, but Plaintiff changed her name to Wilma Mason after marrying.  (R. at 49-50.)

[2] The five-step process requires the ALJ consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy.  *See* 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988.)  The claimant has the burden of proof through steps one to four; the Social Security Administration has the burden of proof at step five.  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

following limitations:

> [T]he claimant would require the option to sit or stand alternatively at will while at her workstation provided she is not off-task more than 10% of the work period. She can never climb ladders, ropes or scaffolds but can occasionally balance, stoop, crouch, kneel and crawl. The claimant is limited to jobs that can be performed while using a hand-held assistive device required for ambulation, while the contralateral extremity can be used to lift and carry up to her exertional limitation. She should avoid concentrated exposure to dangerous moving machinery and unprotected heights. The claimant should avoid jobs that require teamwork. She is capable of performing simple, work related decisions with ordinary routines and simple instructions. The claimant should have only occasional interaction with the public, her co-workers and supervisors.

(R. at 30.)

At step four, the ALJ found that Plaintiff could not perform any of her past relevant work. (R. at 34-35.) At step five, the ALJ found that there were significant numbers of jobs in the national economy that Plaintiff could perform. (R. at 35.) Specifically, the ALJ found that Plaintiff could work as a packager, assembler, or surveillance systems monitor. (R. at 36.) Accordingly, the ALJ found that Plaintiff was not disabled within the meaning of the Act and, thus, not entitled to benefits. (*Id.*)

The Appeals Council denied Plaintiff's request for review on August 21, 2013. (R. at 1.) Plaintiff then filed this action seeking review of the Commissioner's decision. (ECF No. 1.) Plaintiff's Opening Brief was filed on March 14, 2014. (ECF No. 18.) The Commissioner's Response Brief (ECF No. 19) was filed on April 9, 2014, and Plaintiff's Reply Brief (ECF No. 20) was filed on April 25, 2014.

## II.  LEGAL STANDARD

The Court reviews the Commissioner's decision to determine whether substantial

evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*. "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Evidence is not substantial if it is overwhelmed by other evidence in the record. *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005). In reviewing the Commissioner's decision, the Court may neither reweigh the evidence nor substitute its judgment for that of the agency. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). "On the other hand, if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### III.  ANALYSIS

In her appeal, Plaintiff raises three arguments with respect to the ALJ's denial of benefits: (1) the ALJ erred at step three by not properly evaluating whether Plaintiff's physical impairments met Listing 1.04; (2) the ALJ did not properly weigh the medical opinion of Dr. Juanita C. Ainsley, Psy.D., in formulating the RFC; and (3) the restriction in the RFC of a sit/stand option at will was not sufficiently specific to result in a reliable answer from the vocational expert. (ECF No. 18 at 7-13.) The Court will address each of these arguments in turn below.

**A.     Listing 1.04**

Plaintiff makes two arguments that the ALJ erred at step three: (1) the ALJ did

not properly evaluate whether Plaintiff's spinal and back impairments met Listing 1.04, and (2) the ALJ should have consulted a medical expert to determine whether Listing 1.04C was met or equaled. (ECF No. 18 at 7-10.)

The analysis of a claim at step three requires consideration of whether a claimant has an impairment that meets or equals any listing found at 20 C.F.R. § 404, Subpart P, Appendix 1. If a claimant has such an impairment, he is deemed disabled and no further analysis is required. *See* 20 C.F.R. § 404.1520(a)(4)(iii); (d). A claimant's impairment "meets" a Listing if such impairment matches all of the specified criteria in one of the Listings. 20 C.F.R. § 404.1525(c)(3). A claimant's impairment, or combination of impairments, "equals" a Listing where the impairment "is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a). An ALJ is required "to discuss the evidence and explain why [s]he found that [a claimant] was not disabled at step three." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1997). In the absence of ALJ findings supported by specific weighing of the evidence, the reviewing court "cannot assess whether relevant evidence adequately supports the ALJ's conclusion that the appellant's impairments did not meet or equal any Listed Impairment, and whether he applied the correct legal standards to arrive at that conclusion." *Id*.

Plaintiff contends that the ALJ's step three analysis was insufficient because the ALJ failed to provide sufficient reasoning supporting her conclusion that Plaintiff's impairment did not meet or medically equal Listing 1.04, Disorders of the Spine. (ECF No. 18 at 7-9.) Listing 1.04 requires a diagnosis of a disorder of the spine resulting in compromise of a nerve root or the spinal cord, accompanied by one of three medical

consequences. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04. Plaintiff argues that she should have been found to meet or equal Listing 1.04C, which requires "[l]umbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b." *Id.* § 1.04C. The relevant definition of an "inability to ambulate effectively" is as follows:

> Inability to ambulate effectively means an extreme limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (*see* 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

*Id.* § 1.00B2b. Plaintiff asserts that she was diagnosed with a disorder of the spine that resulted in pseudoclaudication, and points to medical evidence that she required an assistive device to walk, as well as her own testimony that she had been using two canes to walk without falling. (ECF No. 18 at 8-9.)

In this case, the Court finds that the ALJ's analysis at step three applied the correct legal standards and was supported by substantial evidence. The ALJ discussed Plaintiff's testimony that she requires a cane, but found that she did not require two canes or a walker. (R. at 27.) Because the definition of an "inability to ambulate effectively" requires the use of one or more devices which occupy both hands, the use of a single cane does not meet that standard. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00B2b1. On review of Plaintiff's testimony that she uses two canes, the Court notes that Plaintiff admitted that her physician said, "I won't prescribe them for you," and that

6

instead, she purchased them at an auction. (R. at 57-58.) Plaintiff did not testify that she required two canes to walk, only that she had been using the two canes she had purchased. (*Id.*) The medical records support a finding that Plaintiff "does walk with a cane", but Plaintiff has pointed to no evidence that two canes are required due to insufficient functioning of her lower extremities. (R. at 325); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00B2b1. Accordingly, the ALJ's finding that Listing 1.04C was not met or equaled was supported by substantial evidence. *See Lax*, 489 F.3d at 1084. Further, because the ALJ specifically discussed the evidence at issue, the Court finds that the ALJ's step three analysis was sufficient. *See Clifton*, 79 F.3d at 1009.

Plaintiff next argues that the ALJ should have consulted a medical expert to determine whether Listing 1.04C was met or equaled. (ECF No. 18 at 9.) An ALJ must seek a medical expert's opinion at step three under two circumstances: (1) when no additional medical evidence is received but the ALJ finds that "the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or [2] when additional medical evidence is received that in the opinion of the [ALJ] or the Appeals Council may change the . . . finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments." Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *4 (July 2, 1996).

The Court finds that neither of these two circumstances applies here. The ALJ's discussion of the evidence at step three demonstrates that she did not make the predicate finding that "a judgment of equivalence may be reasonable" to require an expert's opinion, and there is no indication that any additional medical evidence was

received or that the ALJ opined that such evidence would change her step three analysis. Because the ALJ's decision at step three was supported by substantial evidence, the Court finds no basis on which to require an updated medical opinion from an expert.

Therefore, the Court finds that Plaintiff has failed to show any error in the ALJ's analysis of Listing 1.04 at step three.

**B.      Dr. Ainsley's Opinion**

Plaintiff argues that the ALJ erred in her evaluation of Dr. Ainsley's medical opinion.[3] (ECF No. 18 at 10-12.) In determining what weight to give any medical opinion, the ALJ "must . . . consider a series of specific factors" listed in 20 C.F.R. § 404.1527(d) and § 416.927(d). *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). Those sections of Title 20 of the Code of Federal Regulations provide as follows:

> How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
>
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
>
> (2) Treatment relationship. . . .
>
> (3) Supportability. The more a medical source presents

---

[3] Because Dr. Ainsley was not a treating physician, the sequential process applicable to treating physicians is not relevant here. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

>relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions. We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources.
>
> (4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.
>
> (5) Specialization. . . .
>
> (6) Other factors. When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the opinion. For example, the amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has, regardless of the source of that understanding, and the extent to which an acceptable medical source is familiar with the other information in your case record are relevant factors that we will consider in deciding the weight to give to a medical opinion.

20 C.F.R. § 416.927(d); *see also* 20 C.F.R. § 404.1527(d). "After considering the pertinent factors, the ALJ must give good reasons in the notice of determination or decision for the weight he ultimately assigns the opinion." *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (quotation marks and brackets omitted).

Plaintiff contends that the ALJ improperly "picked and chose" amongst the medical opinions offered by Dr. Ainsley. (ECF Nos. 18 at 12; 20 at 2.) Specifically, Plaintiff argues that the ALJ ignored the Global Assessment of Functioning ("GAF") score of 35 that Dr. Ainsley assigned to Plaintiff, while crediting the remainder of her

9

uncontradicted opinion. (*Id.*)  Plaintiff also contends that the ALJ erred in considering Plaintiff's refusal of psychological care until two weeks before the hearing, because the ALJ may not "draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment."  SSR 96-7p, 1996 WL 374186, at *7 (July 2, 1996).

There is support for Plaintiff's contention that an ALJ cannot "pick and choose" from a medical opinion; however, that is true only when it is truly an "uncontradicted medical opinion".  *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007).  Here, the ALJ agreed that Dr. Ainsley's opinion was "the only report regarding the claimant's psychological condition at the time," but nevertheless pointed out conflicting evidence regarding Plaintiff's psychological functioning from Plaintiff's own testimony about her lifestyle and activities.  (R. at 33.)  The opinion of state agency physician Dr. Ellen Ryan, M.D., also contradicts Dr. Ainsley's GAF score, in that Dr. Ryan reviewed Dr. Ainsley's treatment notes and opinion but assigned only mild and moderate limitations in her Mental RFC Assessment.  (R. at 124-29.)  When such conflicting evidence exists, an ALJ is "entitled to resolve any conflicts in the record." *Haga*, 482 F.3d at 1208.  In resolving these conflicts, an ALJ is permitted to disregard or discredit a medical opinion that is contradicted by other evidence in the record.  S*ee Lopez v. Barnhart*, 183 F. App'x 825, 828 (10th Cir. 2006).

In this case, there is sufficient medical evidence in the record to permit the ALJ to find that Plaintiff possessed a greater degree of psychological functioning than that

assessed by Dr. Ainsley. A GAF score of 35 indicates some impairment in reality testing or communication, or major impairment in several areas. *See* American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders p. 34 (4th ed. 2000). However, the ALJ's discussion of the medical evidence indicates that she did not find support for a GAF score indicating such severity of mental impairments. The ALJ considered and gave significant weight to Dr. Ainsley's treatment notes and opinions apart from the GAF score, but found that they indicated "a greater degree of functioning than that alleged." (R. at 33.) The ALJ also noted that Plaintiff's testimony about the disabling effects of her psychological symptoms was contradicted by her testimony about her lifestyle; for example, Plaintiff's claim that she could not be around people was contradicted by her regular grocery shopping and participation in an empowerment group that meets regularly. (R. at 32.) This evidence is sufficient to permit the ALJ to not fully credit Dr. Ainsley's assessment of Plaintiff's GAF score.

As to the ALJ's reference to Plaintiff's refusal of psychological treatment and medications, the Court finds that the ALJ sufficiently considered any explanations supported by the evidence of record for such refusal before drawing negative inferences. *See* SSR 96-7p, 1996 WL 374186, at *7. The ALJ cited medical evidence from February 2011, after the initial denial of Plaintiff's claims, noting that Plaintiff lacked any medication for her bipolar disorder and was offered a referral to a psychiatrist, but that she "does not want to take any medication." (R. at 408.) The ALJ also noted that Plaintiff had state insurance, which would have provided access to such medication. (R. at 32-33.) Finally, the ALJ noted that after Plaintiff began medication, two weeks prior to the hearing, Plaintiff testified that it was working well, diminishing her

symptoms.  (*Id.*)  Accordingly, the Court rejects Plaintiff's speculative assertions that the ALJ might have ignored other possible reasons for Plaintiff's failure to seek psychological treatment such as "lack of insight into her impairments or lack of insurance, money, or availability of treatment in her area."  (ECF No. 18 at 11.)  The ALJ considered these alternative explanations and found that they were not supported by the record.  Accordingly, the ALJ's decision to consider Plaintiff's prior refusal of psychological treatment and medication in weighing Dr. Ainsley's opinion of Plaintiff's GAF score was not reversible error, nor was it a failure to follow SSR 96-7p.

The Court notes that its role is not to look at the medical evidence anew; it may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001).  Rather, the Court must affirm the Commissioner's decision if the legal standards were applied correctly and there is substantial evidence supporting the ALJ's findings.  *See Glenn v. Shalala*, 21 F.3d 983, 988 (10th Cir. 1994).  Having reviewed the relevant portions of the record, the Court finds that the ALJ applied the correct legal standard, adequately explained her rationale for the weight assigned to Dr. Ainsley's opinion, and cited substantial evidence in the record to support her findings.  Thus, the Court sees no error in the manner in which the ALJ weighed Dr. Ainsley's opinions.

**C.     Sit/Stand Option**

Plaintiff contends that the ALJ's RFC was insufficiently specific with respect to the requirement for "the option to sit or stand alternatively at will while at her workstation provided she is not off-task more than 10% of the work period."  (ECF No. 18 at 12-13

(citing R. at 30).) Under SSR 96-9p, the extent to which the occupational base for unskilled sedentary work will be eroded by a sit/stand option "will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing . . . . The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing." SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996).

Here, Plaintiff argues that the lack of specificity in the RFC regarding the frequency of alternating between sitting and standing tainted the vocational expert's testimony that there were sufficient jobs in the national economy that Plaintiff could perform with that RFC. (ECF No. 18 at 13.) The Court finds no merit to this assertion. In the ALJ's hypothetical questions to the vocational expert, she defined the sit/stand option as in the RFC: an option to sit or stand alternatively "at will", with the caveat that such alternate positions would not cause the claimant to be off-task more than ten percent of the work period. (R. at 100.) The specificity of this definition is sufficient to eliminate the concerns posed by Plaintiff that rapid or frequent alternation of position would be disruptive to the pace of the job, and that unskilled jobs "are particularly structured so that a person cannot ordinarily sit or stand at will", because the ten percent limit prevents the pace from being unduly affected and the vocational expert would have to eliminate the jobs to which Plaintiff refers that prohibit sitting or standing at will. (*See* ECF No. 18 at 13.)

Accordingly, the Court finds that the ALJ's sit/stand option in the RFC sufficiently complies with SSR 96-9p, and did not taint the ALJ's reliance on the vocational expert's testimony at step five. Therefore, the Court finds no reversible error.

## IV.  CONCLUSION

For the reasons set forth above, the Court AFFIRMS the Commissioner's denial of benefits.  The Clerk shall close this case and enter judgment in favor of Defendant.

Dated this 12th day of February, 2015.

BY THE COURT:

William J. Martinez
United States District Judge